UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| CHARLOTTE WALLACE, ) | Case No. 04-53554-705 |
| ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | |
| CHARLOTTE WALLACE, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -v- ) | Adv. No. 05-4053-293 |
| ) | |
| EDUCATIONAL CREDIT ) | |
| MANAGEMENT CORP., et. al., ) | (Publish) |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff, Charlotte Wallace, filed an adversary proceeding seeking a determination that the student loan debt she incurred while obtaining her law degree was included in her discharge pursuant to 11 U.S.C. § 523(a)(8). Because Plaintiff demonstrated by a preponderance of the evidence that excepting the student loan debt from her discharge will impose an undue hardship on her, the

-1-

Court will enter judgment in her favor.

**JURISDICTION AND VENUE**

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§1334, 151, and 157 and Local Rule 9.01 (B) of the United States District Court for the Eastern District of Missouri.  This is a core proceeding under 28 U.S.C. §157(b)(2)(I), which the Court may hear and determine.  Venue is proper in this District under 28 U.S.C. §1409(a).

**FINDINGS OF FACT**

The adversary proceeding was tried on August 21, 2006, and the Court makes the following findings of fact.  Plaintiff is a well educated and articulate 58 year old woman.  Plaintiff obtained a Bachelor of Arts degree in French in 1969 from Principia College in Elsah, Illinois.  Plaintiff then earned a Masters of Arts degree in Russian Literature from New York University in 1971.

Despite her impressive academic pedigree, Plaintiff's work history from the time she earned her master's degree from NYU, until she entered law school in 1998 was inconsistent.  After completing her degree from NYU, Plaintiff taught both Russian and French at a private high school in Massachusetts from 1972 through 1975.  Plaintiff then served as a Russian speaking guide at the United States Information Agency from 1976 through 1977.  Plaintiff next accepted a

-2-

teaching fellowship at the University of Michigan for the 1977 and 1978 academic years, where she taught Russian.  After completing the teaching fellowship at Michigan, Plaintiff taught an Introduction to Russian class at Washington State University in the summer of 1979.

Plaintiff spent the remaining 19 years, prior to enrolling in law school in 1998, at the University of Washington, where she held a variety of administrative positions.  These positions were either part-time or temporary and included little, if any, teaching responsibilities.

Plaintiff did teach one class of Russian at a private high school in Seattle in the Spring of 1986 and then again 1988.  She also served as a visiting professor at Principia College during the 1997-1998 academic year, where she taught French, Russian and Russian Literature.  Plaintiff earned $39,000.00 in 1997 while teaching at Principia, which is the highest annual income she has realized in her working career.

Plaintiff chose to return to school and obtain a law degree to enhance her earning potential.  Plaintiff applied to both the University of Washington and Washington University, and both institutions accepted her for admission.  Plaintiff elected to attend Washington University because of the contacts she developed while at Principia College and because her son formerly resided in the St. Louis

area.

Plaintiff financed her law school education by obtaining student loans. It is unclear from the evidence presented at trial as to the original principal amounts of the various loans. As of the petition date, however, Plaintiff had consolidated the various loans into two notes (collectively the "Student Loans"). One of the consolidated loans was held by Access Group, Inc. ("Access Group") and had a balance of $59,838.00 as of the petition date. The other consolidated loan was held by Educational Credit Management Corporation ("ECMC"), and the balance on that obligation was $71,644.00 as of the petition date.

Plaintiff finished in the bottom quarter of her law school class at Washington University. Upon graduation, she accepted a position as a judicial law clerk with the Maine Superior Court, the trial court of general jurisdiction in the Maine state court system. Plaintiff's salary in that position was $37,830.00 per year, and the term of the clerkship was one year.

Plaintiff sat for both the Maine and Massachusetts bar exams in August 2001, and flunked both exams. Between August 2001 and February 2004 Plaintiff sat for, and flunked, either the Maine or Massachusetts bar exams a total of six times.

Plaintiff's failure to pass a bar exam has seriously hampered her ability to

obtain meaningful employment in the legal field.  The undisputed evidence adduced at trial demonstrated that Plaintiff has vigorously searched for permanent employment, but has been unable to secure a position.  Plaintiff credibly testified that she has submitted her resume to over 65 firms and institutions.  Plaintiff also testified that she has applied for a number of paralegal and administrative assistant positions with law firms, but firms have rejected her application because of a lack of training and experience in those two jobs.  She further stated at trial that she has consulted a number of persons for "informational" interviews, but none of these interviews resulted in any substantial leads for permanent employment.

Plaintiff left Maine and returned to St. Louis in June 2004, hoping that her employment prospects would improve in a larger metropolitan area.  She continued to diligently search for a permanent position, both within and without the legal field, after arriving in St. Louis.  This search included applying for a number of academic and administrative positions at both Principia College and Washington University.  Despite a rather extensive effort to secure a permanent position, she was only able to secure temporary employment through legal temp agencies here in St. Louis.

Plaintiff also testified at trial that although, in 1969, she received her bachelor's degree in French, she is no longer sufficiently proficient in French to

teach the language, even at the high school level.  Plaintiff further stated at trial that she did look into the possibility of teaching Russian at the high school level, but only a select few high schools offer Russian and there were no openings in those programs.  Plaintiff additionally testified that it would be difficult to obtain a teaching position at the secondary level in Missouri because she does not have a teaching certificate, and she does not have the financial ability to return to school to obtain one.

Because of her spotty employment history, and subsequent prolonged periods of underemployment or unemployment, Plaintiff exhausted all of her forbearance options with Access and all but four months of her forbearance options with ECMC.  Also, Plaintiff made some payments on the Student Loans with funds she withdrew from her retirement accounts.  Plaintiff, therefore, did not default on her obligations on the Student Loans prior to her filing her petition for relief under the Code.

When Plaintiff exhausted her forbearance periods with Access, and she was no longer able to make her monthly payments on the Student Loans, she filed her petition for relief under Chapter 7 of Code on October 24, 2004.  This Court issued a discharge in favor of Debtor under 11 U.S.C. §727(a) on February 1, 2005.  Plaintiff then filed this instant adversary on March 14, 2005, requesting that the

Court determine that Debtor's discharge included her obligations under the Student Loans as provided in 11 U.S.C. §523(a)(8).

As of the petition date, Plaintiff's monthly net income was $2,225.95. Plaintiff, however, testified at trial that this income was the result of a temporary four month assignment and that she was unemployed as of the date of her discharge on February 1, 2005. Plaintiff further stated at trial that her annual average gross income since graduating from law school was approximately $26,000.00, which included the $37,000.00 she earned the year immediately following law school while serving as a law clerk. She additionally stated that since graduating from law school, her average net monthly income was approximately $1,600.00.

Plaintiff listed her monthly expenditures at $2,197.33 on her Schedule J, which included a monthly payment of $325.00 on her Student Loan obligation. Plaintiff testified that by the time of trial in August 2006, her monthly expenses had increased to approximately $2,400.00. This amount, however, included several one time expenses and does not represent Plaintiff's average monthly expenses on a long term basis.

Plaintiff was able to secure a permanent position as an executive assistant with RaboAgri Finance in June 2006. Her salary at this position was $40,000.00

per annum and included fringe benefits, such as health care insurance. Plaintiff, however, was terminated from this position on August 7, 2006 after a 60 day probationary period. The documentary evidence produced at trial indicates that Plaintiff was terminated because she was unable to satisfactorily correct many errors that her supervisor identified and communicated to her during multiple evaluations during the probationary period. Plaintiff was not employed as of the trial date.

## **CONCLUSIONS OF LAW**

*A. Introduction*

Section 523(a)(8) states in relevant part that any student loan made, insured or guaranteed by a governmental unit is excepted from discharge "unless excepting such debt from discharge...would impose an undue hardship on the debtor." The debtor has the burden of establishing such undue hardship by a preponderance of the evidence. *Cumberworth v. United States Dept. of Ed. (In re Cumberworth)*, 347 B.R. 652, 657 (B.A.P. 8th Cir. 2006). Also, the Court should examine the debtor's circumstances as of the date of the discharge in making the undue hardship determination for purposes of §523(a)(8). *Woodcock v. United States Dept. of Ed. (In re Woodcock)*, 326 B.R. 441, 447 (B.A.P. 8th Cir. 2005).

The Code does not define what constitutes "undue hardship". In this Circuit,

however, the undue hardship analysis is fact intensive and requires the bankruptcy court to examine the totality of the circumstances of the particular case. *Long v. Ed. Credit Mgmt. Corp. (In re Long)*, 292 B.R. 635, 638 (B.A.P. 8th Cir. 2003). The bankruptcy court should examine the following factors in conducting the totality of the circumstances analysis: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's reasonably necessary living expenses; and (3) any other relevant facts and circumstances that are present in the individual case. *Id*. The principal inquiry, however, must focus on whether the debtor's reasonably reliable future financial resources will be sufficient to both cover the debtor's obligation on the student loans and provide for a minimal standard of living. *Fahrer v. Sallie Mae Serv. Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004).

After examining the evidence adduced at trial in light of these factors, the Court finds that Plaintiff established by a preponderance of the evidence that excepting her obligations under the Student Loans would impose an undue hardship on her.

B. *Debtor's prospects for obtaining meaningful future employment are dim*.

As illustrated above, despite Plaintiff's impressive academic pedigree, she has been underemployed, or outright unemployed, for a significant portion of her

career. This is particularly true with respect to her work history after obtaining her law degree in 2001. The undisputed evidence produced at trial established that despite diligently searching for a permanent position, the only full time, permanent position Plaintiff has secured after law school was the one year clerkship with the Maine trial court.

Obviously, Plaintiff's inability to pass a bar examination has substantially hindered her ability to secure a position in the legal field. Both EMC and Access argue that Plaintiff should sit for the Missouri bar examination, which would greatly increase her job prospects if she passed. The Court does not doubt that in theory that Plaintiff could greatly enhance her career opportunities if she passed a bar examination. Under the fact intensive totality of the circumstances test, however, the Court must examine whether Plaintiff has a realistic opportunity to pass a bar examination. *See Cumberwoth*, 347 B.R. at 657.

Plaintiff graduated in the bottom quarter of her law school class. She sat for, and failed, six different bar exams since 2001. Further, Plaintiff graduated from law school over seven years ago and, apart from her clerkship, has not had the opportunity to practice in any substantive area of law during that time frame. Given this record, the Court finds that probability of Plaintiff passing a bar examination is quite remote.

Because the possibility that Plaintiff could pass a bar examination is slim, it logically follows that it is quite unlikely that Plaintiff will ever be able to utilize her law degree by practicing law. Also, Plaintiff credibly testified at trial that she has attempted to secure a permanent position as either a legal secretary or a paralegal, but has failed in that endeavor because she does not have the requisite training or experience. Her prospect of obtaining future employment is further diminished by the fact that she was terminated after a two month probationary period from Rabo, the one permanent full-time position she was able to secure.

Defendants failed to produce any evidence that controverts this rather dismal outlook for Plaintiff's future employment prospects. The Court finds that this evidence establishes that Plaintiff's reasonably likely employment opportunities in the legal field are limited to temporary or part-time employment.

Defendants also contend that Plaintiff could utilize her teaching experience and academic training in foreign languages to secure a teaching position. Once again, under the flexible totality of the circumstances test, the Court must examine the facts specific to this case to evaluate whether there is realistic probability that Plaintiff can exploit her foreign language experience and academic training to secure a position as a teacher. *Lieberman v. Ed. Credit Mgmt. Corp. (In re Lieberman)*, 2004 WL 555245, *3 (Bankr. D. Minn. March 4, 2004).

Plaintiff last taught Russian and French in 1997, when she was a visiting professor at Principia College. Plaintiff testified even at that point, her French was barely sufficient to teach an introductory class. Plaintiff remarked at trial that because she has not had the opportunity to speak French on any regular basis over the last ten years, her French fluency has steadily deteriorated to the point that she cannot teach the subject, even at the secondary level.

Plaintiff additionally testified that she has made some investigation into the possibility of teaching Russian at the secondary level, but three factors make this possibility unlikely. First, only a very few high schools in the area offer Russian, and there are no current openings for a Russian teacher at any of those schools. Second, Plaintiff does not hold a teaching certificate in the State of Missouri, and does not have the financial resources to return to school to obtain one. Finally, Plaintiff has not taught at the secondary level for nearly twenty years, and it has been nearly thirty-five years since she taught high school students on a full time basis. The Court finds that this evidence, which Defendants did not controvert, establishes that it is not reasonably likely that Plaintiff will be able to secure a teaching position in the foreseeable future.

In conclusion, the evidence adduced at trial establishes that while Plaintiff's credentials may be impressive in the abstract, an examination of the unique facts of

this case establishes that Plaintiff's probable future employment and income prospects are quite poor. In fact, the uncontradicted evidence establishes that Plaintiff's most probable future employment prospects will be temporary assignments from legal temp agencies. Thus, Plaintiff's future income will very likely be limited, unpredictable and sporadic.

Given this evidence, the Court finds that Plaintiff's reasonably reliable future financial condition will be no better in inflation adjusted dollars as it was at the time of her discharge, when Plaintiff's average net monthly income was $1,600.00. In fact, it is far more likely that Plaintiff's employment and income prospects will significantly decline over time because her law degree will become less relevant with no substantive employment in the legal field.

*C. Plaintiff's expenses are reasonable and necessary.*

A debtor's expenses are reasonable and necessary for purposes of §523(a)(8) if the expenses are "moderate and commensurate with the debtor's resources." *Nelson v. TG Collections (In re Nelson)*, 343 B.R. 919, 923 (Bankr. S.D. Iowa 2004). Here, Debtor listed her monthly expenses at approximately $2,200.00 per month on her Schedule J filed with her petition. This amount included the $350.00 monthly payment on the Student Loan. Thus, after subtracting the Student Loan payment, Plaintiff's monthly expenses as of the petition date were approximately

$1,850.00.

Plaintiff testified at trial that her expenses increased to approximately $2,600.00 per month by the trial date. The Court, however, will only examine Plaintiff's expenses listed in her Schedule J because the case law directs the bankruptcy court to examine the debtor's financial condition as of the discharge date for purposes of §523(a)(8). *See Woodcock*, 326 B.R. at 447. And because Plaintiff's expenses listed in her Schedule J are closer in time to the discharge date than her expenses as of the trial date, the former are more probative of Plaintiff's financial condition as of the date of discharge.[1]

After examining Plaintiff's Schedule J, the Court finds that her expenses are modest and commensurate with her resources. After deducting the $325.00 payment on the Student Loan, Plaintiff's total monthly expenses were a mere $1,850.00. The only expense that Defendants expressly challenged is Plaintiff's $675.00 monthly expense for rent. This argument fails for two reasons. First, although Defendants introduced evidence that Plaintiff could secure an apartment with slightly lower rent in an entirely different section of the City, the proper

---

[1] The Court also notes that the monthly expenses that Plaintiff listed at trial included several one time expenses that she incurred just prior to trial. Accordingly, the total expense of approximately $2,600.00 per month that Plaintiff mentioned at trial is probably not an accurate measure of her average monthly expenses over the long run.

analysis must center on whether the expense is reasonable given Plaintiff's circumstances, not on whether the expense is an absolute bare minimum. *Nelson*, 343 B.R. at 923.

Here, the Court finds that Plaintiff's $675.00 per month expense for housing is reasonable given her circumstances. As Plaintiff stated at trial, it is quite unlikely that someone would be willing to lease an apartment to her given that she is currently unemployed and that she has an inconsistent employment history since moving to St. Louis in 2004. Also, any new landlord would almost certainly require Plaintiff to remit a deposit upon executing the lease, which Plaintiff simply could not realistically pay at this point. Thus, although there is a theoretical possibility that Plaintiff could lower her monthly housing expense, that possibility is remote given the unique circumstances of this case.

The second reason why Defendants' argument fails is that the reasonable expense analysis does not focus on one particular expense. Rather, the analysis must center on whether the debtor's total monthly expenses are reasonable given her particular circumstances. *Cumberworth*, 347 B.R. at 652; *Nelson*, 343 B.R. at 923. Here, the Court has reviewed Plaintiff's Schedule J and finds that Plaintiff lives a quite modest and austere life style. For example, the only payment she has on an installment note is the Student Loan. Plaintiff additionally does not own a

television, does not have a car payment and spends a very modest $30.00 per month on entertainment and recreation.

Plaintiff testified that she suffered a great deal of stress, anxiety and depression since graduating from law school as a result of her uncertain employment prospects. She explained that because of her sincerely held religious beliefs, she expends an average of $200.00 per month on Christian Science Practitioners, as opposed to seeking treatment from a state licensed therapist or psychiatrist, in an effort to cope with these emotional issues.

The Court believes that given Plaintiff's deeply held religious beliefs and the stress caused by her prolonged and unsuccessful job search, this expense is reasonable. Even assuming, however, that this individual expense is not reasonable, the Court would still conclude that Plaintiff's total expenses of $1,850.00 per month is reasonable given the austerity of her overall lifestyle.

D. *The other factors present in this case militate towards finding undue hardship.*

The totality of the circumstances test requires that the Court also examine other non-economic factors to determine if excepting the student loan obligation from discharge would impose an undue hardship. Here, the Court finds that these factors weigh in favor of Plaintiff as well.

Plaintiff did not default on her obligations on the Student Loans prior to

filing her petition for relief under the Code. In fact, Plaintiff withdrew a significant amount of cash from her retirement accounts to make the monthly payments on her Student Loans. She also took advantage of the unemployment forbearance options while she diligently, but unsuccessfully, sought permanent employment.

 Defendants counter by arguing that because Plaintiff has not taken advantage of the Income Contingent Repayment Program ("ICRP"), she cannot establish undue hardship. The Court rejects this argument for three reasons. First, as the Bankruptcy Appellate Panel for this Circuit has observed, the ICRP ties the debtor's monthly payments to her income in excess of the federal poverty level, while the undue hardship analysis focuses on the debtor's reasonably necessary living expenses. *Cumberworth*, 347 B.R. at 660. Thus, because it is unlikely that a person could pay her reasonably necessary living expenses if her income is at the federal poverty level, the fact that a debtor qualifies for the ICRP is of limited probative value in the undue hardship analysis. *Id.* at 660-61.

 Second, because Plaintiff is now 58 years old, she would be approximately 83 years old when her obligations under the ICRP would cease. Although Plaintiff did voluntarily incur her obligations on the Student Loans late in life, the fact that Plaintiff would be obligated on the ICRP well after her working career has ended

points in favor of finding undue hardship. *Fahrer*, 308 B.R. at 35.

Finally, under the ICRP, the remaining balance on the Student Loans is discharged at the end of the payment period, when Plaintiff would be 83 years old. The discharged amount, however, is taxable income to Plaintiff at that point in time. Thus, if Plaintiff did participate in the ICRP, she faces the very real possibility of a significant tax liability when she is 83 years old. In all likelihood she could not satisfy that substantial tax obligation. Thus, if Plaintiff were to take advantage of the ICRP, she would likely face another severe financial emergency sometime in the future. This fact also diminishes the importance of Plaintiff's choice not to apply for the ICRP. *Id.* at 35.

The only non-economic factor that would militate against finding undue hardship is the fact that the Student Loans constitute just under 82% of Plaintiff's total unsecured debt. One of the non-economic factors that a Court should consider is whether the student loan obligation constitute a substantial portion of the debtor's overall unsecured debt. *Bray v. Ed. Credit Mgmt., Corp. (In re Brey)*, 332 B.R. 186, 198 (Bankr. W.D. Mo. 2005). But given Plaintiff's bleak future financial prospects, her rather austere life style, and her good faith efforts to obtain employment and repay the Student Loans, the totality of the circumstances still warrant a finding of undue hardship.

## **CONCLUSION**

As the trier of fact, the Court had the opportunity to observe Plaintiff's demeanor and listen to her testimony as she testified in this case. The Court is convinced her testimony is truthful and she is a credible witness.

The evidence adduced at trial establishes that Plaintiff's current employment and income prospects are quite bleak and those prospects will likely deteriorate in the future. Additionally, she established that her expenses are reasonable and necessary. Thus, Plaintiff demonstrated at trial that there is a high probability that she will not be able to both maintain a minimal standard of living and meet her obligation on the Student Loans given her reasonably reliable future income. Furthermore, the balance of the other non-economic factors present in this case justify a finding of undue hardship.

Given the totality of this evidentiary record, the Court finds that Plaintiff established by a preponderance of the evidence that excepting her obligations under the Student Loan would impose an undue hardship on her as provided in §523(a)(8). The Court finds, therefore, that the Student Loan obligations were included in Debtor's discharge under §727(a).

An Order consistent with this Memorandum Opinion will be entered this date.

DATED: November 27, 2007
St. Louis, Missouri
JBB

/s/ David P. McDonald
David P. McDonald
United States Bankruptcy Judge

Copy mailed to:

Charlotte Wallace
4515 Maryland Avenue, #717
Saint Louis, MO 63108-1942

David P. Stoeberl
Carmody MacDonald
120 S. Central Avenue, Ste 1800
St. Louis, MO 63105-1705

Nick B. Schopp
Levine Law, LLC
408 North Euclid
St. Louis, MO 63108